

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR 10 2015
ARTHUR JOHNSTON
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**BRUCE STRAIN AND PEGGY STRAIN**                                    **PLAINTIFFS**
**AND FRANK CIUFFETELLI**
**vs.**                              CIVIL ACTION NO. 1:15cv7116 RHW

**GULF COAST SHIPYARD GROUP, INC.**                        **DEFENDANT**

### COMPLAINT IN ADMIRALTY TO ABATE OR MITIGATE NUISANCE,
### FOR INJUNCTIVE RELIEF, AND FOR DAMAGES

COME NOW Plaintiffs, Bruce Strain and Peggy Strain, and Frank Ciuffetelli by and through

their attorneys of record Page, Mannino, Peresich & McDermott, P.L.L.C., and file this their

Complaint in Admiralty to Abate or Mitigate Nuisance, for Injunctive Relief, and For Damages

against the Defendant, Gulf Coast Shipyard Group, Inc., d/b/a Gulf Coast Shipyard Operations, Inc.,

d/b/a Trinity Yachts, d/b/a TY Offshore, and in support thereof would show the following:

### NATURE OF THE ACTION

1.       This is an admiralty and maritime claim within the meaning and intent of Rule 9(h) of the

Federal Rules of Civil Procedure; this action is brought pursuant to the admiralty and maritime

jurisdiction of the United States, and particularly pursuant to 28 U.S.C. §1333 [admiralty] as well

as the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure in the United States District Courts in the State of Mississippi, and 28 U.S.C. §2201

[declaratory judgment] and F. R. Civ. P. 57 [declaratory judgment] and F. R. Civ. P. 65 and under

Mississippi law in a cause of maritime tort and nuisance, for damages and to abate a maritime

nuisance resulting in unreasonable damage to and interference with Plaintiffs, Bruce Strain and his

wife Peggy Strain's ("the Strain Plaintiffs"), and Frank Ciuffetelli's marine structures, landings,

docks and wharves located within and adjacent to Gulfport Lake, within the boundaries of a platted

subdivision situated immediately across Gulfport Lake from the facilities operated by the Defendant,

Gulf Coast Shipyard Group, Inc., d/b/a/ Gulf Coast Shipyard Operations, Inc., d/b/a/ Trinity Yachts,

d/b/a TY Offshore (hereafter "collectively referred to as "GCSG") to compensate Plaintiffs for damages sustained and for injunction against future annoyances, inconvenience, and damages to their real and personal property.

## PARTIES

2.      Plaintiffs, Bruce Strain and his wife Peggy Strain and Frank Ciuffetelli are all adult resident citizens of Harrison County, Mississippi, and within the jurisdiction of this honorable Court.

3.      The Defendant, Gulf Coast Shipyard Group, Inc., is a Delaware Corporation whose principal place of business and "nerve center where its officers direct, control and coordinate the corporation's activities"[1] and main office address is 13085 Seaway Rd., Gulfport, MS. Gulf Coast Shipyard Operations, Inc. is within the territorial limits of this honorable Court and can be served with process by delivering a copy of a summons and this Complaint to GCSO's Registered Agent in Mississippi who is John Dane, III, 13085 Seaway Rd., Gulfport, MS.

## JURISDICTION

4.      This is an action brought pursuant to 28 U.S.C. §1333 [admiralty] asserting Admiralty and Maritime claims within the meaning of F. R. Civ. P. 9(h), as governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in the United States District Courts in the State of Mississippi, and 28 U.S.C. §2201 [declaratory judgment] and F. R. Civ. P. 57 [declaratory judgment] and F. R. Civ. P. 65. Pursuant to the Admiralty Extension Act, admiralty jurisdiction extends to this matter since the damage in question was caused by a vessel on navigable waters. 46 U.S.C. App. § 740. The Court also has pendent jurisdiction over Plaintiff's state law claims because they arise from the same common nucleus of operative facts as the statutory and general maritime law claims.

---

[1] See *Hertz Corp. v. Friend*, U.S., 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010).

## VENUE

5.      Venue is properly laid in this Court because the property where the activities giving rise to the nuisance are carried out, as well as the intervening waters of Gulfport Lake and Plaintiffs' residential properties are all situated within the confines of the Southern District of Mississippi.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      At all times since July 28, 2005 Plaintiffs Bruce and Peggy Strain have been the owners in fee simple of the following platted subdivision residential real property and all improvements situated thereon which are within Harrison County, Mississippi: Six (6) Block one (1) Gulfport Lake Vista, duly recorded in Plat Book 20, Page 38 on file in the land records office of the Chancery Clerk of the First Judicial District of Harrison County, Mississippi (herein referred to as "the Strain Residential Property"). The post Hurricane Katrina improvements on the Strain Residential Property include a substantial new residence, a new pier and boat dock with a covered boat shed and a pre-existing serviceable and well maintained wooden sea wall or bulkhead protecting the entire 230 foot waterfront elevation of the property topped with an adjacent concrete sidewalk. At all times since January 30, 2013, Plaintiff Frank Ciuffetelli has been the owner in fee simple of the following platted subdivision residential real property and all improvements situated thereon which are within Harrison County, Mississippi: Five (5) Block one (1) Gulfport Lake Vista, duly recorded as Year 2013 Instrument 642 on file in the land records office of the Chancery Clerk of the First Judicial District of Harrison County, Mississippi (herein referred to as "the Ciuffetelli Residential Property"). Improvements on the Ciuffetelli Residential Property include a residence, and a new sea wall or bulkhead protecting the entire shoreline of the property.

7.      At the time that the Plaintiffs Bruce and Peggy Strain acquired the Strain Residential Property on July 28, 2005 and thereafter constructed the improvements thereon except for the pre-

existing serviceable bulkhead until the early part of 2012, the property where GCSG now conducts barge construction and launching activities was used as a recreational volleyball facility adjacent to a commercial waterfront restaurant property.

8.      Beginning in approximately July 2012, GCSG demolished their recreational volleyball and boat slips' facility and converted the property into a commercial shipyard and began building and launching, approximately every 30 days thereafter, a series of large (approximately 300 feet x 54 feet x 12 feet) ocean or river going commercial barges. To date, GCSG has launched a number of such large barges, with a number of such launchings having taken place within the last year.

9.      On information and belief, GCSG is presently constructing and has plans to construct and launch more such large barges on a regular schedule extending into the foreseeable future.

10.      GCSG's shipyard where the barges are constructed is approximately 20 feet above the level of Gulfport Lake. Each barge is constructed on fast land, parallel to the shoreline. Each completed barge is winched or jacked onto an inclined marine railway or launching ramp adjacent to the shoreline and thereafter allowed to slide by force of gravity without restraint down the marine railway into the lake. As a result, the entire approximately 300 foot long side elevation of the barge simultaneously impacts and displaces a massive volume of the relatively shallow (yet navigable) waters of the lake with great force. Plaintiffs' property is situated in Gulfport Lake and along an exposed point directly across the lake from GCSG's shipyard. Apart from Plaintiffs' marine structures, there  are no breakwaters or other natural or artificial barriers shielding Plaintiffs' property from the effects of GCSG's barge launching activities.

11.      Viewed from the Plaintiffs' residences, each massive barge launched momentarily disappears from view hidden behind a sizable artificial wave projected directly at Plaintiffs' property. Shortly thereafter, and before the wave generated by the barge's impact reaches the opposite shore, the lake

waters adjacent to Plaintiffs' backyard suddenly and violently recedes generating a powerful artificial suction causing the lake bottom to be exposed for a considerable distance. The displaced waters thereafter rush back and repeatedly impact Plaintiffs' property and waterfront structures with considerable force. This artificial wave activity vastly exceeds the force of any normal weather or pleasure boat induced wave action.

12.     Despite Plaintiffs' best efforts at mitigation, this barge launch induced phenomenon has undermined and largely destroyed Plaintiffs' wooden bulkhead and other marine facilities.

13.     In addition, this barge launch induced phenomenon has so severely eroded the Strain Plaintiffs' fast land behind the bulkhead, that portions of the adjacent concrete sidewalk have collapsed into large resulting voids along the waterway. At one place, the collapsing sidewalk severed the water line which formerly served Plaintiffs Strains' boat dock. A similar soil erosion problem has developed behind the new bulkhead protecting the Ciuffetelli Residential Property.

14.     Plaintiffs have made demand upon GCSG to reimburse them for their damages (including the cost of reconstructing and/or improving their bulkhead to make it able to withstand the barge launched induced phenomena together with the cost of filling in the voids, replacing the damaged sidewalk and otherwise repairing the damage to Plaintiffs' lawn). GCSG has declined to do so.

15.     This barge launch induced phenomenon also exposes the Strain Plaintiffs' approximately 47 foot pleasure vessel which is normally safely moored in the covered boat shed adjacent to Plaintiffs' pier to the risk of severe damage; experience has taught that this risk requires that the Strain Plaintiffs' vessel either be removed from the water or relocated to the deeper waters of the adjacent lake during launches. In recognition of the risk and of impracticality of imposing upon Strain Plaintiffs to remove their vessel from the water to suit its launching schedule, GCSG has adopted the practice of detailing its employees to move Strain Plaintiffs' boat to a safer location during

launches. This arrangement has caused damages to and has otherwise materially inconvenienced Strain Plaintiffs, and promises to continue to do so with each launch; in addition, the arrangement has proven unsatisfactory because the exact launch time for each barge is not precise and is often significantly delayed or postponed due to mechanical problems, tide levels and inclement weather conditions.

16.     GCSG's representatives have caused, and continue to cause, damage to and undue wear and tear on Plaintiffs' vessel. GCSG has declined to meaningfully compensate Strain Plaintiffs for such damage, or repair Plaintiffs' vessel.

17.     GCSG does not compensate the Strain Plaintiffs for the unnecessary consumption of fuel for Plaintiffs' boat solely to avoid harm from GCSG's barge launching activities.

18.     The Strain Plaintiffs are co-owners and managers of a local business situated in downtown Gulfport. They feel compelled to be present at their residence during launches to observe and protect their property, which is a substantial inconvenience and financial imposition upon the Strain Plaintiffs while they are away from their place of business, which is not compensated by GCSG.

19.     Plaintiffs have proposed that GCSG compensate them for the actual cost of upgrading an existing boat lift in the Strain Plaintiffs' existing boat shed which would alleviate the need for, and problems associated with GCSG's employees moving Plaintiffs' vessel during launches. If Strain Plaintiffs' boat could be so hoisted out of the water, it would be out of harm's way and eliminate Plaintiffs' need to be present at their residence during launching activities. GCSG has declined to so accommodate Plaintiffs. Plaintiff Ciuffetelli has proposed that GCSG compensate him for the actual cost of repairs to his new bulkhead, including backfilling and resoding the eroded portions of that property.

20.     Plaintiffs have patiently endured and suffered losses from GCSG's barge launching activities

while they have attempted to reach an understanding with GCSG that would fairly and reasonably compensate them for damages already sustained, and for the inconvenience and damages that Plaintiffs will sustain during the foreseeable future while GCSG's barge launching activities continue. To date, GCSG has offered only nominal, insufficient assistance and consideration in an amount far less than the amount necessary to make the Plaintiffs whole and compensate them for the ongoing inconvenience and annoyance associated with GCSG's barge launching activities.

21.     Plaintiffs will continue to endure and suffer losses from GCSG's barge launching activities for the foreseeable future because on information and belief, GCSG has existing contracts to construct additional barges and continues to solicit contracts for the future construction of similar barges.

**COUNT I - MARITIME NEGLIGENCE/ BREACH OF DUTY**

**EXCESSIVE WAKE/VIOLATION OF**

**INLAND RULES OF NAVIGATION CLAIM**

22.     Plaintiffs incorporate by reference the allegations of paragraphs 1-21 above as if fully set forth herein.

23.     GCSG is the owner and master of the marine ways on its property and of each barge constructed and launched from its facilities by employees and agents of GCSC.

24.     Each barge launched by GCSG goes down GCSC's ways into Gulfport Lake, which are "navigable waters" subject to the Inland Rules of Navigation found in 33 C.F.R. Part 83 and subject to Maritime tort law governed by general principles of negligence law.

25.     The Strain Plaintiffs are the owners and masters of their private pleasure vessel permanently moored adjacent to their property on the waters of Gulfport Lake and the owners of their real and personal property situated on and adjacent to Gulfport Lake. Plaintiff Ciuffetelli is the owner of his

real and personal property situated on and adjacent to Gulfport Lake.

26.     In connection with the launching of its barges, GCSG has a duty to all Plaintiffs and the Strains' pleasure vessel pursuant to 33 C.F.R. § 83.02(a) and Maritime tort law to take "any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case" to avoid damage to the Strain Plaintiffs' pleasure vessel and all Plaintiffs' private real and personal property situated on or adjacent to Gulfport Lake.

27.     Marine ways are necessary for the proper construction or repairing of vessels, and must be located near the  water's edge, so that vessels afloat can be readily hauled  upon them, and if properly operated, dock-yards are not necessarily a  nuisance, although the act of launching or hauling out a vessel broadside upon them requires the exercise of great care and caution.

28.     Each barge launch by GCSG in the fashion described in this Complaint constitutes a negligent and/or intentional act on the part of GCSG which, at a minimum, violates 33 C.F.R. § 83.02(a) and 33 C.F.R. §§ 83.02(a) and 83.06(a)(ii), (v) and (vi), and Maritime tort law generally by generating excessive wave or wake action. The harm which does occur and which has occurred as a result of said negligent and/or intentional act on the part of GCSG was and is foreseeable and was and is within the scope of danger created by GCSG 's negligent or intentional conduct taking into account in guiding its practical conduct including not only those natural forces which are constantly and habitually operating within and adjacent to Gulfport Lake but also those other forces which operate periodically or with a certain degree of frequency therein.

29.     GCSG is aware of its negligent and intentional activity described in this Complaint because it routinely details a GCSG crew to temporarily relocate the Strain Plaintiffs' vessel elsewhere in Gulfport Lake during a launch; however, this precautionary act on the part of GCSG has proven insufficient to avoid past and future damage to the Strain Plaintiffs' vessel and other property and

in no way addresses the chronic inconvenience to the individual Strain Plaintiffs who must absent themselves from their business activities during each unpredictable launch.

30.    Unless GCSG modifies its current method of launching barges so as to avoid the excessive wake or wave activity complained of by the Strain Plaintiffs, the only effective precautions which might be taken, but have not been taken by GCSG, is to (a) compensate the Strain Plaintiffs for the reasonable cost of modifying their existing vessel docking facility to facilitate the removal of the Strain Plaintiffs' vessel from the waters of Gulfport Lake with sufficient elevation to allow the excessive wave or wake generated by GCSC's launches to pass safely under the elevated vessel and to replace the Strain Plaintiffs' existing bulkhead with a new structure of sufficient strength and consideration to withstand the excessive wave or wake generated by GCSG's launches, and (b) to repair the damages so far sustained by Plaintiff Ciuffetelli's bulkhead and property, or to compensate Plaintiff Ciuffetelli for the reasonable cost thereof. Demand has been made upon GCSG by Plaintiffs to compensate Plaintiffs for the cost of implementing these appropriate precautionary measures at the expense of GCSG to no avail.

WHEREFORE PREMISES CONSIDERED, Plaintiffs request a declaratory judgment pursuant to F. R. Civ. P. 57 that GCSG's barge launchings have, and will continue to violate Rules 2(b) and 6 of the Inland Rules of Navigation, 33 U.S.C.S. §§ 2002(b), and 2006 obligating GCSG to modify GCSG's method of launching barges so as to abate the nuisance, or construct at GCSG's sole expense such repairs and improvements to Plaintiffs' real and personal property as are reasonably necessary to restore, preserve and protect Plaintiffs' real and personal property from the past and future consequences of GCSG's barge launchings, or to pay damages to the Plaintiffs in an amount reasonably required for Plaintiffs to restore, preserve and protect Plaintiffs' real and personal property from the past and future consequences of GCSG's barge launchings.

## COUNT II - REQUEST FOR DECLARATORY RELIEF

31.     Plaintiffs incorporate by reference the allegations of paragraphs 1-30 above as if fully set forth herein.

32.     There exists an actual dispute with respect to which the Parties have a compelling need to know where they stand before entering into a substantial financial undertaking.

33.     Prior to the onset of GCSG's barge launching activities, the Ciuffetelli property's bulkhead was a new construction in good condition and the Strain Plaintiffs' bulkhead was in good condition and was regularly and properly maintained by the Strain Plaintiffs.  Both bulkhead structures were capable of withstanding all natural and artificial wave action typically generated within Gulfport Lake. The barge launching activity to date has damaged and undermined the new Ciuffetelli bulkhead and  caused the Strains' existing bulkhead to rapidly deteriorate to the point where it can no longer be economically maintained or repaired.  But for GCSG's barge launching activities, Plaintiffs' bulkhead would have not sustained such damage and Plaintiffs would have had no need to extensively and continuously repair or consider replacing their bulkhead with a costly new structure designed to cope with the effects of GCSG's barge launching activities and protect their property from further erosion.  GCSG has so far declined to reconstruct or replace Plaintiffs' bulkhead, or compensate Plaintiffs for the actual cost of such construction.

34.     Similarly, but for the effects of GCSG's barge launching activities, the Strain Plaintiffs' existing boat shed would be entirely sufficient to protect the Strain Plaintiffs' boat.  Temporarily moving the Strain Plaintiffs' boat to an alternative location during launches is neither desirable nor practical because of the uncertainty of the schedule of GCSG's barge launchings, and the resulting uncompensated fuel consumption, wear and tear, and consequential damage to the boat when operated by GCSG employees.  The ideal solution would be for GCSG to pay for the installation of

a boat lift to be installed in the Strain Plaintiffs' existing boat shed which would protect the boat and avoid all of the other problems complained of. However, GCSG has declined the Strain Plaintiffs' request to make this improvement to the Strain Plaintiffs' existing boat shed, which would not be necessary, except for GCSG's barge launchings.

35.      Plaintiffs have no way of knowing or predicting how long GCSG's barge launchings will continue into the future and no guarantee that GCSG will continue to provide the inadequate level of assistance heretofore provided to unsuccessfully avoid damage to Plaintiffs' real and personal properties.

36.      The Strain Plaintiffs have obtained estimates of the cost of upgrading their bulkhead, filling in the eroded pockets behind the existing bulkhead, re-sodding the damaged portion of their yard, repairing their sidewalk and installing the recommended boat lift, which total approximately $83,000.00. Plaintiff Ciuffetelli has obtained an estimate of the cost of backfilling and replacing the eroded portions of his lawn and repairing damage to his new bulkhead , which total approximately $1,350.00.

37.      Plaintiffs should not be forced to choose whether to expend this significant sum now in order to preserve and protect their property from further damages associated with GCSG's barge launchings, or wait possibly for years for a compensatory damage award against GCSG.

38.      Therefore, a declaration in Plaintiffs' favor declaring that GCSG's barge launchings have created a private nuisance entitling the Plaintiffs to appropriate relief at the expense of GCSG may accelerate and precipitate an early resolution of this controversy.

WHEREFORE PREMISES CONSIDERED, Plaintiffs request a declaratory judgment pursuant to admiralty law and F. R. Civ. P. 57 that GCSG's barge launchings have created a private nuisance obligating GCSG to modify GCSG's method of launching barges so as to abate the

nuisance, or construct at GCSG's sole expense such repairs and improvements to Plaintiffs' real and

personal property as are reasonably necessary to restore, preserve and protect Plaintiffs' real and

personal property from the past and future consequences of GCSG's barge launchings, or to pay

damages to the Plaintiffs in an amount reasonably required for Plaintiffs to restore, preserve and

protect Plaintiffs' real and personal property from the past and future consequences of GCSG's

barge launchings.

### COUNT III-INJUNCTIVE RELIEF

39.     Plaintiffs incorporate by reference the allegations of paragraphs 1-38 above as if fully set

forth herein.

40.     Currently, and for the past 2 years, GCSG's barge launching activity has been carried on

without due regard for avoiding or mitigating the adverse effects of such activity upon the platted

residential property situated in and directly across the lake from GCSG's launching ramp described

above.

41.     There exists a substantial likelihood that the Plaintiffs will prevail on the merits. A lawful

maritime business may be carried on in such a manner as to become a nuisance in fact, subject to

be abated by injunctive relief. As to whether the operation of a lawful maritime business is a

nuisance in fact depends upon the surrounding facts and circumstances, each particular case is to be

determined very largely by its own facts. A fair test as to whether a maritime business, lawful in

itself, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business

complained of in the particular locality, and under the circumstances of the case. Plaintiffs do not

object to the construction of barges by GCSG generally.  Rather, they only object to the adverse

consequences to their real and personal property associated with the manner in which barges have

been and are currently launched by GCSG.  Plaintiffs are not experts in the launching of barges, and

should not be required or put to the trouble and expense of attempting to devise a method of launching barges by GCSG that will meaningfully mitigate or eliminate the adverse consequences to their real and personal property associated with the manner in which barges are currently launched by GCSG. GCSG possesses or should be required to obtain expert advice about how to launch their barges in an alternative fashion which will meaningfully mitigate or eliminate the adverse consequences to their real and personal property associated with the manner in which barges are currently launched by GCSG. Consequently, GCSG's maritime business, though lawful in itself, constitutes a nuisance in admiralty, because it has adopted a manner of launching its barges which is unreasonable and then should be enjoined because of the adverse consequences inflicted upon the Plaintiffs who can neither control or avoid such adverse consequences.

42. Injunctive relief is necessary and demanded by the Plaintiffs to avoid further immediate and irreparable harm. Such injunctive relief should take the form of a preliminary and permanent order: (a) prohibiting GCSG from continuing to launch barges in a fashion which has damaged Plaintiffs' real and personal property in the past until such time as GCSG agrees or is ordered by this Court to modify the fashion in which GCSG has heretofore launched its barges to avoid further damage to Plaintiff's real or personal property, or (b) prove to the Court's satisfaction that GCSG cannot launch its barges in some other fashion which will avoid further damage to Plaintiffs' real or personal property, and if so, © constructs, or is ordered by the Court to construct, at GCSG's sole expense, the aforesaid improvements to Plaintiffs' real and personal property which would not be necessary but for GCSG's continued launching of barges in the fashion heretofore employed, or (d) is required to either pay to the Plaintiffs the reasonable and necessary cost of constructing the aforesaid improvements to Plaintiffs' real and personal property which would not be necessary but for GCSG's continued launching of barges in the fashion heretofore employed, and/or requiring GCSG

to post a bond in favor of the Plaintiffs for a like amount of money.

43.     The past and threatened harm to Plaintiffs outweighs the harm the injunction might do to GCSG. The cost of either devising and adopting an alternative method of launching barges that avoids the damages to Plaintiffs' real and personal property, or constructing or funding the construction of the necessary improvements to Plaintiffs' real property to cope with the adverse consequences if GCSG continues to launch barges in the current fashion, is a cost of doing business which GCSG can and should have allocated across its multi-year program of barge construction, which will continue into the foreseeable future. By comparison, Plaintiffs, as individual property owners, can ill afford to absorb the significant cost of repairing and modifying their real and personal property in ways that would not be necessary except for the consequences of GCSG's current method of launching barges.

44.     The entry of an injunction in admiralty is consistent with the public interest. The southern shores of Gulfport Lake across from GCSG's barge launching facility have been platted residential subdivision properties for many years. The commercial and launching activities of other industrial neighbors of GCSG on the north shore of Gulfport Lake do not create comparable nuisances to their residential neighbors across the lake. Additionally, Gulfport Lake itself is a navigable waterway which is open and equally accessible to the public for commercial and recreational use at all times. GCSG's current method of launching barges is distinctly different from and contrary to the lawful nondisruptive and nondestructive activities of its industrial neighbors. It is also incompatible with the lawful residential use of properties immediately opposite GCSG's facility, including the Plaintiffs' property and the lawful commercial and recreational use of the Lake itself.

WHEREFORE PREMISES CONSIDERED, Plaintiffs seek preliminary and permanent injunctive relief pursuant to F. R. Civ. P. 65 in the form of a preliminary and permanent order: (a)

prohibiting GCSG from continuing to launch barges in a fashion in which has damaged Plaintiffs' real and personal property in the past until such time as GCSG agrees or is ordered by this Court to modify the fashion in which GCSG has heretofore launched its barges to avoid further damage to Plaintiffs' real or personal property, or (b) proves to the Court's satisfaction that GCSG cannot launch its barges in some other fashion which will avoid further damage to Plaintiffs' real or personal property, and if so, © constructs, or is ordered by the Court to construct, at GCSG's sole expense, the aforesaid improvements to Plaintiffs' real and personal property which would not be necessary but for GCSG's continued launching of barges in the fashion heretofore employed, or (d) is required to either pay to the Plaintiffs the reasonable and necessary cost of constructing the aforesaid improvements to Plaintiffs' real and personal property which would not be necessary but for GCSG's continued launching of barges in the fashion heretofore employed, and/or requiring GCSG to post a bond in favor of the Plaintiffs for a like amount of money. Plaintiffs further seek such other injunctive relief as may be appropriate under the circumstances.

## COUNT IV-COMPENSATORY DAMAGES

45.  Plaintiffs incorporate by reference the allegations of paragraphs 1-44 above as if fully set forth herein.

46.    As the result of the barge launching activities of GCSG complained of, plaintiffs have suffered actual compensatory damages resulting from:

    a.     Deterioration and destruction of the existing bulkheads on both properties ;

    b.     Repairs to the existing bulkheads on both properties  and the potential cost of replacing the Strain Property's existing bulkhead, plus the added cost of obtaining the necessary permits, if any, required for any such new construction;

    c.     Erosion of Plaintiffs' fast land behind Plaintiffs' existing bulkheads;

d.      Collapse of portions of the Strain Plaintiffs' sidewalk to voids eroded behind Plaintiffs' existing bulkhead;

e.      Damages to, and wear and tear to Strain Plaintiffs' boat;

f.      Expenditures for unnecessary fuel consumption in the Strain Plaintiffs' vessel during launches;

g.      Damages to the Strain Plaintiffs' vessel while in the temporary custody and control of GCSG's employees;

h.      The cost of improving the Strain Plaintiffs' existing boat house by adding a boat lift capable of lifting the Strain Plaintiffs' boat out of harm's way, which would not otherwise be necessary but for GCSG's barge launching activity;

I.      Damages and repairs to the Strain Plaintiffs' pier;

j.      Inconvenience and lost time from the Strain Plaintiffs' place of business during launches;

k.      Aggravation and general inconvenience associated with launches.

47.      The aggregate amount of the Strain Plaintiffs' compensatory damages to date is at least $83,000.00. The aggregate amount of Plaintiff Ciuffetelli's compensatory damages to date is at least $1,350.00.

WHEREFORE PREMISES CONSIDERED, Plaintiffs hereby request that their Complaint be filed and advanced in priority on the docket of this Court.  Plaintiffs further demand judgment against GCSG in the following respects:

1.      Declaratory relief pursuant to F. R. Civ. P. 57 that GCSG's barge launchings have created a private nuisance obligating GCSG to modify GCSG's method of launching barges so as to abate the nuisance, or construct at GCSG's sole expense such repairs and improvements to Plaintiffs' real

and personal property as are reasonably necessary to restore, preserve and protect Plaintiffs' real and personal property from the past and future consequences of GCSG's barge launchings, or to pay damages to the Plaintiffs in an amount reasonably required for Plaintiffs to restore, preserve and protect Plaintiffs' real and personal property from the past and future consequences of GCSG's barge launchings, and

2.      Preliminary and permanent injunctive relief pursuant to F. R. Civ. P. 65 in the form of a preliminary and permanent order: (a) prohibiting GCSG from continuing to launch barges in a fashion in which has damaged Plaintiffs' real and personal property in the past until such time as GCSG agrees or is ordered by this Court to modify the fashion in which GCSG has heretofore launched its barges to avoid further damage to Plaintiffs' real or personal property, or (b) proves to the Court's satisfaction that GCSG cannot launch its barges in some other fashion which will avoid further damage to Plaintiffs' real or personal property, and if so, (c) constructs, or is ordered by the Court to construct, at GCSG's sole expense, the aforesaid improvements to Plaintiffs real and personal property which would not be necessary but for GCSG's continued launching of barges in the fashion heretofore employed, or (d) is required to either pay to the Plaintiffs the reasonable and necessary cost of constructing the aforesaid improvements to Plaintiffs' real and personal property which would not be necessary but for GCSG's continued launching of barges in the fashion heretofore employed, and/or requiring GCSG to post a bond in favor of the Plaintiffs for a like amount of money. Plaintiffs further seek such other injunctive relief as may be appropriate under the circumstances, and

3.      Compensatory damages to the Strain Plaintiffs of at least $ 83,000.00 and compensatory damages to Plaintiff Ciuffetelli of at least $1,350.00.

4.     Such other legal or equitable legal relief as the Court may deem appropriate under the circumstances.

Respectfully submitted, this the ___ day of _____ 2015.

_____

BRUCE STRAIN

_____

PEGGY STRAIN

_____

FRANK CIUFFETELLI

Page 18 of 22

PAGE, MANNINO, PERESICH
& McDERMOTT, P.L.L.C.

By: _____
WILLIAM V. WESTBROOK, III
(MSB Bar No. 7119)
Page, Mannino, Peresich & McDermott,
P.L.L.C.
2408 14th Street
Gulfport, MS 39501-2019
Telephone: 228-868-8999
Facsimile: 228-868-8940
cwestbrook@PMP.org

PAGE, MANNINO, PERESICH
& McDERMOTT, P.L.L.C.

By: _____
WILLIAM SYMMES, ESQ.
(MSB Bar No. 100002)
Page, Mannino, Peresich & McDermott,
P.L.L.C.
2408 14th Street
Gulfport, MS 39501-2019
Telephone: 228-868-8999
Facsimile: 228-868-8940
wil.symmes@pmp.org

STATE OF MISSISSIPPI

COUNTY OF HARRISON

Personally appeared before me, the undersigned authority in and for the said county and state, the within named **BRUCE STRAIN**, who acknowledged that he executed the above and foregoing instrument and that the matters set forth therein are true and correct as therein stated to the best of his knowledge, information and belief.

**BRUCE STRAIN**

SWORN TO AND SUBSCRIBED before me, this the 23 day of February, 2015.

NOTARY PUBLIC

MY COMMISSION EXPIRES:

Page 20 of 22

STATE OF MISSISSIPPI

COUNTY OF HARRISON

  Personally appeared before me, the undersigned authority in and for the said county and state, the within named **PEGGY STRAIN**, who acknowledged that she executed the above and foregoing instrument and that the matters set forth therein are true and correct as therein stated to the best of her knowledge, information and belief.

                   _____
                    **PEGGY STRAIN**

  SWORN TO AND SUBSCRIBED before me, this the 23 day of February, 2015.

                   _____
                   NOTARY PUBLIC

MY COMMISSION EXPIRES:

STATE OF MISSISSIPPI

COUNTY OF HARRISON

Personally appeared before me, the undersigned authority in and for the said county and state, the within named **FRANK CIUFFETELLI**, who acknowledged that he executed the above and foregoing instrument and that the matters set forth therein are true and correct as therein stated to the best of his knowledge, information and belief.

_____
**FRANK CIUFFETELLI**

SWORN TO AND SUBSCRIBED before me, this the 3rd day of March, 2015.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

_____

STATE OF MISSISSIPPI
DEBORAH LEE GREEN
ID NO. 21056
Commission Expires
06/23/2017
NOTARY PUBLIC
HARRISON COUNTY